Filed 2/24/25 (on remand from Supreme Court)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA
SECOND APPELLATE DISTRICT
DIVISION FOUR

| | |
|---|---|
| ANGELICA RAMIREZ, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> CHARTER COMMUNICATIONS, INC., <br><br> Defendant and Appellant. | B309408 <br><br> (Los Angeles County Super. Ct. No. 20STCV25987) |

APPEAL from an order of the Superior Court of Los Angeles County, David J. Cowan, Judge. Affirmed.

Seyfarth Shaw, James M. Harris, Kirstina M. Launey; Latham & Watkins and Roman Martinez for Defendant and Appellant.

Panitz Law Group and Eric A. Panitz for Plaintiff and Respondent.

# INTRODUCTION

Angelica Ramirez sued her former employer, Charter Communications, Inc. (Charter), asserting claims under the California Fair Employment and Housing Act (Gov. Code, § 12940 et seq.; FEHA). Charter moved to compel arbitration of Ramirez's claims based on the parties' arbitration agreement. The trial court concluded the agreement contained unconscionable provisions and declined to enforce it.

In *Ramirez v. Charter Communications, Inc.* (2022) 75 Cal.App.5th 365 (*Ramirez I*), a different panel of this court held the arbitration agreement contained four unconscionable provisions. (*Id.* at pp. 386-387.) The panel affirmed the trial court's refusal to enforce the agreement rather than severing the tainted provisions and enforcing the remainder. (*Id.* at p. 386) The Supreme Court concurred that three of the four provisions are substantively unconscionable and remanded the matter to this court to consider the severance question anew. (*Ramirez v. Charter Communications, Inc.* (2024) 16 Cal.5th 478, 517-518 (*Ramirez II*).)

After receiving supplemental briefing following remand, we conclude severing the unconscionable provisions would not further the interests of justice and, therefore, affirm the trial court's refusal to enforce the agreement.

## FACTUAL AND PROCEDURAL BACKGROUND

We set forth below the factual and procedural background, quoting liberally from our Supreme Court's opinion and *Ramirez I*. We limit our recitation of the facts to those relevant to the issues on remand.

2

"[Charter] has nearly 100,000 employees and provides telecommunications services throughout the United States. Charter has adopted an alternative dispute resolution program called Solution Channel, which it describes as 'the means by which a current employee, a former employee, an applicant for employment, or Charter can efficiently and privately resolve covered employment-based legal disputes.'

"Charter job applicants had to agree to use Solution Channel. If a job offer was made, prospective employees used a computerized onboarding process. They were required to read several company documents and policies and to agree [to them] by use of an electronic signature. Those documents included a Mutual Arbitration Agreement (Agreement) and the Solution Channel Guidelines (Guidelines).

"Charter hired plaintiff Angelica Ramirez in July 2019. Using the onboarding process, Ramirez accepted the proposed Agreement, including adherence to the Guidelines. In May 2020, Ramirez was fired. She sued Charter in July 2020, alleging claims for discrimination, harassment, and retaliation under the California Fair Employment and Housing Act (Gov. Code, § 12900 et seq.; FEHA) along with a claim of wrongful discharge in violation of public policy.

"Relying on the Agreement, Charter moved to compel arbitration and to recover the attorney fees incurred in seeking that ruling. In opposition, Ramirez argued the Agreement was procedurally unconscionable as a contract of adhesion, and that several provisions were substantively unconscionable as well. The challenged provisions included those: describing which claims were subject to and excluded from arbitration; imposing a shortened filing period for certain claims; limiting the discovery

available in arbitration; and allowing Charter to recover attorney fees in a manner contrary to FEHA. Charter urged the Agreement was not unconscionable. Alternatively, it argued that, if certain provisions were so held, they should be severed and the balance of the Agreement enforced.

"The trial court found that the Agreement was one of adhesion because it was required as a condition of employment. It concluded the Agreement was substantively unconscionable because it shortened the time for filing a claim; violated FEHA by failing to limit Charter's recovery of attorney fees to cases involving frivolous or bad faith claims; and impermissibly allowed an interim fee award to a party which successfully compelled arbitration. The court rejected arguments that the discovery limitations and the exclusion of some claims were unconscionable. Finding the Agreement was 'permeated with unconscionability,' the court refused to enforce it and denied the motion to compel arbitration. Charter appealed." (*Ramirez II, supra,* 16 Cal.5th at pp. 489-490, fn. omitted.)

A different panel of this court affirmed the denial of Charter's motion, "although it disagreed with aspects of the trial court's reasoning and concluded additional provisions were unconscionable." (*Ramirez II, supra,* 16 Cal.5th at p. 491.) It also "disagreed with *Patterson v. Superior Court* (2021) 70 Cal.App.5th 473 (*Patterson*) as to the enforceability of a provision calling for an interim award of attorney fees following a successful motion to compel." (*Ramirez II, supra,* 16 Cal.5th at p. 491.)

The California Supreme Court then granted Charter's petition for review "to resolve that conflict and to determine whether the Court of Appeal erred in concluding the Agreement

4

was unconscionable because it lacked mutuality in terms of the claims subject to and excluded from arbitration; shortened the period for filing claims; and truncated discovery. [The Supreme Court] also agreed to resolve whether the Court of Appeal's refusal to sever the unconscionable provisions and enforce the Agreement violated the [Federal Arbitration Act (FAA)]." (*Ramirez II, supra,* 16 Cal.5th at p. 491.)

The Supreme Court concluded three aspects of the Agreement are unconscionable but the discovery rules imposed by the Agreement and the Guidelines are not.[1] (*Ramirez II, supra,* 16 Cal.5th at p. 517.) The Supreme Court also clarified the appropriate inquiry for determining whether a court should sever the unconscionable provisions or refuse to enforce the entire agreement. (*Id.* at pp. 513-518.) It then remanded the matter to this court to "consider the severance question anew . . . in a manner consistent with [its] opinion."[2] (*Id.* at p. 518.)

---

1       Charter did not challenge this court's conclusion that the Agreement was procedurally unconscionable because it was an adhesion contract required as a condition of employment. (*Ramirez II, supra,* 16 Cal.5th at p. 493.) Charter urged, however, that the degree of unconscionability is low because the Agreement's adhesive nature is the only basis for that finding. (*Ibid.*) The Supreme Court responded: "[A]lthough adhesion alone generally indicates only a low degree of procedural unconscionability, the potential for overreaching in the employment context warrants close scrutiny of the contract's terms." (*Id.* at p. 494.)

2       The Supreme Court also rejected Charter's argument that it would contravene the FAA to apply the general law of unconscionability and to refuse to sever the Agreement's unconscionable provisions. (*Ramirez II, supra,* 16 Cal.5th at p. 518.)

5

Following remand, the parties submitted supplemental briefing on the appropriate remedy, i.e., whether the court should refuse to enforce the agreement, or whether the court should sever the unconscionable provisions and enforce the rest.

## DISCUSSION

### A. Applicable Law

Civil Code section 1670.5, subdivision (a) provides: "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result." In *Ramirez II, supra,* 16 Cal.5th 478, our Supreme Court clarified the analytical framework for determining whether severance of the unconscionable provisions is warranted. (*Id.* at pp. 513-518)

"[N]o bright-line rule *requires* a court to refuse enforcement if a contract has more than one unconscionable term. Likewise, a court is not *required* to sever or restrict an unconscionable term if an agreement has only a single such term. Instead, the appropriate inquiry is qualitative . . . . At the outset, a court should ask whether 'the central purpose of the contract is tainted with illegality.' [Citation.] If so, the contract cannot be cured, and the court should refuse to enforce it. If that is not the case, the court should go on to ask first, whether the contract's unconscionability *can* be cured purely through severance or restriction of its terms, or whether reformation by augmentation is necessary. [Citation.] If no 'reformation is required,' the offending provision can be severed or limited, and 'the rest of the arbitration agreement left intact,' then severance or restriction is

6

the preferred course for provisions that are collateral to the agreement's main purpose. [Citations.] If the unconscionability cannot be cured by extirpating or limiting the offending provisions, but instead requires augmentation to cure the unconscionability, then the court should refuse to enforce the contract. [Citations.] Courts cannot 'rewrite agreements and impose terms to which neither party has agreed.'" (*Ramirez II, supra*, 16 Cal.5th at p. 516, original italics.)

"Even if a contract *can* be cured, the court should also ask whether the unconscionability *should* be cured through severance or restriction because the interests of justice would be furthered by such actions. [Citation.] This part of the inquiry focuses on whether mere severance of the unconscionable terms would function to condone an illegal scheme and whether the defects in the agreement indicate that the stronger party engaged in a systematic effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage. [Citation.] If the answer to either question is yes, the court should refuse to enforce the agreement.

"In conducting this analysis, the court may also consider the deterrent effect of each option. As *Mills v. Facility Solutions Group, Inc.* (2022) 84 Cal.App.5th 1035 explained, severing multiple unconscionable provisions from an agreement and enforcing the remainder could 'create an incentive for an employer to draft a one-sided arbitration agreement in the hope employees would not challenge the unlawful provisions, but if they do, the court would simply modify the agreement to include the bilateral terms the employer should have included in the first place.' [Citation.] Although there are no bright-line numerical

7

rules regarding severance, it is fair to say that the greater the number of unconscionable provisions a contract contains the less likely it is that severance will be the appropriate remedy.

"Finally, if the contract contains a severance clause, the court should take it into account as an expression of the parties' intent that an agreement curable by removing defective terms should otherwise be enforced. [Citations.] That said, . . . the parties to an agreement cannot divest a trial court of its discretion under Civil Code section 1670.5 by including such a severance clause. [Citation.]

"Accordingly, courts may liberally sever any unconscionable portion of a contract and enforce the rest when: the illegality is collateral to the contract's main purpose; it is possible to cure the illegality by means of severance; *and* enforcing the balance of the contract would be in the interests of justice." (*Ramirez II, supra*, 16 Cal.5th at pp. 516-517, original italics.)

## B.    Analysis

The California Supreme Court agreed with this court that three aspects of the agreement are substantively unconscionable: (1) the lack of mutuality in the covered and excluded claims provisions; (2) the shortened limitations periods for filing claims; and (3) the potential for an unlawful award of attorneys' fees. The Supreme Court summarized those provisions as follows.

"In Section A of the Agreement, Ramirez and Charter 'mutually agree' that 'any dispute arising out of or relating to [Ramirez's] pre-employment application and/or employment with Charter or the termination of that relationship, except as specifically excluded below, must be resolved through binding arbitration by a private and neutral arbitrator, to be jointly chosen by [Ramirez] and Charter.' Sections B and C modify

8

section A and specify certain claims as subject to (section B) or excluded from (section C) arbitration. Among other claims, those for wrongful termination, discrimination, harassment, and retaliation are made subject to arbitration." (*Ramirez II, supra,* 16 Cal.5th at p. 491.)

"Section E limits the time for filing an arbitration claim." (*Ramirez II, supra,* 16 Cal.5th at p. 491.) "It requires the 'aggrieved party' to 'give written notice of the claim, in the manner required by this Agreement, within the time limit established by the applicable statute of limitations for each legal claim being asserted.' It further provides that, '[t]o be timely, any claim that must be filed with an administrative agency or body as a precondition or prerequisite to filing the claim in court, must be filed with Solution Channel within the time period by which the charge, complaint or other similar document would have had to be filed with the agency or other administrative body.'" (*Id.* at p. 500.)

"Section K governs the allocation of arbitral costs, fees, and expenses. It requires that Charter pay 'AAA administrative fees' and 'the arbitrator's fees and expenses.' 'All other costs, fees and expenses associated with the arbitration, including without limitation each party's attorneys' fees, will be borne by the party' incurring them. Section K goes on to provide that 'the failure or refusal of either party to submit to arbitration as required by this Agreement will constitute a material breach of this Agreement. If any judicial action or proceeding is commenced in order to compel arbitration, and if arbitration is in fact compelled or the party resisting arbitration submits to arbitration following the commencement of the action or proceeding, the party that resisted arbitration will be required to pay to the other party all

9

costs, fees and expenses that they incur in compelling arbitration, including, without limitation, reasonable attorneys' fees.'" (*Ramirez II*, *supra*, 16 Cal.5th at p. 491.)

Applying the principles set forth in *Ramirez II, supra*, 16 Cal.5th 478, we conclude severing the unconscionable provisions in the Agreement is not warranted. As an initial matter, we reject Charter's argument that we should further remand to the trial court to make this determination in the first instance. The Supreme Court invited our consideration of the issue. (See *Ramirez II, supra*, 16 Cal.5th at p. 518 ["On remand, the Court of Appeal may consider the severance question anew, in light of its answers to those questions, and in a manner consistent with this opinion"].) If the Supreme Court contemplated a further remand, it likely would have suggested it. (See, e.g., *Truck Ins. Exchange v. Kaiser Cement & Gypsum Corp.* (2024) 16 Cal.5th 67, 101 ["On remand, the parties are free to raise any arguments they believe may aid the court in deciding [the issues]. The Court of Appeal, in turn, retains discretion to make a further remand to the trial court if it concludes that the trial court is better positioned to address [the issues]"] (fn. omitted).)

Turning to the merits, we are skeptical of Charter's position that the first two criteria for severing the unconscionable provisions (i.e., the illegality is collateral to the contract's main purpose, and it is possible to cure the illegality by means of severance) have been satisfied. First, we disagree with Charter's characterization of the Agreement's central purpose. Relying on the title of the Agreement ("Mutual Arbitration Agreement"), it claims the central purpose is to "mutually arbitrate disputes 'arising out of or relating to [Ramirez's] pre-employment application and/or employment with Charter or the termination

of that relationship.'" This characterization is belied, however, by the Agreement's lack of mutuality regarding arbitrable claims. As the Supreme Court explained, "a wide range of statutory and policy-based claims that would typically be initiated by an employee are directed into arbitration. On the other hand, only a small subset of claims that would typically be initiated by Charter are similarly directed." (*Ramirez II, supra*, 16 Cal.5th at p. 498.) Based on the lack of mutuality in the covered and excluded claims provisions, it appears the real purpose of the agreement is to subject the employee to arbitration "as a means of maximizing employer advantage." (*Id.* at p. 495.)

Second, Charter urges the unconscionable provisions can simply be severed without reformation or augmentation of the agreement. We agree with Charter that the offending sentence in Section E (filing time limits provision) and the offending sentence in Section K (attorneys' fees provision) can easily be deleted. But Section C (excluded claims provision) is more problematic. Section C specifically excludes 14 claims from arbitration. Although most of those claims are ones that are more likely to be brought by an employer against the employee (*Ramirez II, supra*, 16 Cal.5th at p. 498), Ramirez *could* bring some of those claims. By simply deleting Section C, thereby subjecting all 14 claims to arbitration, we would be effectively rewriting the Agreement to cover claims Ramirez did not agree to arbitrate. Courts cannot, however, "'rewrite agreements and impose terms to which neither party has agreed.'" (*Id.* at p. 516.)

In any event, even if we agreed with Charter that the unconscionable provisions are collateral to the contract's main purpose and it is possible to sever those provisions, severance is still not warranted because "enforcing the balance of the contract

11

would [not] be in the interests of justice." (*Ramirez II, supra*, 16 Cal.5th at p. 517.) The multiple defects in the Agreement "indicate that the stronger party [Charter] engaged in a systematic effort to impose arbitration on the weaker party not simply as an alternative to litigation, but to secure a forum that works to the stronger party's advantage." (*Id.* at pp. 516-517.) As the Supreme Court acknowledged, "[a]lthough there are no bright-line numerical rules regarding severance, it is fair to say that the greater the number of unconscionable provisions a contract contains the less likely it is that severance will be the appropriate remedy." (*Id.* at p. 517.)

Specifically, the Agreement impermissibly conveys the following to the employee: her claims are likely subject to arbitration, but claims likely to be brought by Charter against her are exempt from arbitration; she will potentially have to initiate arbitration of her FEHA claims before an administrative investigation can be conducted (thereby stripping her of the benefits of the Civil Rights Department's involvement, including obtaining "'"a prompt, detailed response from the employer, giving the employee a free, quick look at the defenses the employer is likely to raise"'") (*Ramirez II, supra*, 16 Cal.5th at p. 502); and, critically, she risks challenging the enforceability of the Agreement because even if some of her arguments are successful, she is still required to pay Charter's attorneys' fees and costs if the court ultimately compels arbitration. Mere severance of these provisions and enforcement of the remainder of the Agreement could "'create an incentive for an employer to draft a one-sided arbitration agreement in the hope employees would not challenge the unlawful provisions, but if they do, the court would simply modify the agreement to include the bilateral

terms the employer should have included in the first place.'" (*Id.* at p. 517.)

The Agreement's severance clause does not change our conclusion.[3] The Supreme Court explained: "[I]f the contract contains a severance clause, the court should take it into account as an expression of the parties' intent that an agreement curable by removing defective terms should otherwise be enforced. [Citations.] That said, we note that the parties to an agreement cannot divest a trial court of its discretion under Civil Code section 1670.5 by including such a severance clause." (*Ramirez II, supra*, 16 Cal.5th at p. 517.) Based on the adhesive nature of the Agreement, we decline to permit the severance clause to dictate the outcome when, as here, severance of the unconscionable provisions would not further the interests of justice. (See *Armendariz v. Foundation Health Psychcare Services, Inc.* (2000) 24 Cal.4th 83, 115 ["[I]n the case of preemployment arbitration contracts, the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and

---

3    Section Q provides, in part: "The parties explicitly acknowledge and agree that the provisions of this Agreement are both reasonable and enforceable. However, if any portion or provision of this Agreement (including, without implication of limitation, any portion or provision of any section of this Agreement) is determined to be illegal, invalid, or unenforceable by any court of competent jurisdiction and cannot be modified to be legal, valid, or enforceable, the remainder of this Agreement shall not be affected by such determination and shall be valid and enforceable to the fullest extent permitted by law, and said illegal, invalid, or unenforceable portion or provision shall be deemed not to be a part of this Agreement."

13

necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement"].)

Accordingly, based on the totality of the circumstances, we conclude the Agreement is permeated by unconscionability and cannot be enforced.[4]

## DISPOSITION

Following remand from the Supreme Court, the disposition remains unchanged from the disposition contained in our opinion filed February 18, 2022: "The trial court's order denying Charter's motion to compel arbitration is affirmed. Ramirez is entitled to her costs on appeal." (*Ramirez I, supra*, 75 Cal.App.5th at p. 387.)

## CERTIFIED FOR PUBLICATION

CURREY, P. J.

We concur:

COLLINS, J.

MORI, J.

---

4    In light of our conclusion, we need not determine whether additional provisions in the Agreement, identified by amicus curiae brief in the Supreme Court, are also substantively unconscionable.